UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIGGERS HOLDINGS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-cv-4680 |
| v. ) | |
| ) | Judge Marvin E. Aspen |
| JULIO A. GARCIA, REAL PEOPLE ) | |
| REALTY, INC., and DEMETRIOS T. ) | |
| CHRONIS ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Biggers Holdings LLC ("Biggers") moves for partial summary judgment on its claims against Defendant Julio Garcia. (Plaintiff's Renewed Motion for Partial Summary Judgment ("Mot.") (Dkt. No. 55); Memorandum of Law in Support of Plaintiff Biggers Holdings LLC's Renewed Motion for Partial Summary Judgment ("Mem.") (Dkt. No. 56).)[1] Garcia does not oppose the motion. For the following reasons, we grant Biggers's motion.

## BACKGROUND

We take the following facts from Biggers's Local Rule 56.1 statements and the materials cited therein. (*See* Plaintiff Biggers Holdings LLC's Rule 56.1 Statement of Material Facts in Support of Its Motion for Partial Summary Judgment ("Pl.'s SOF") (Dkt. No. 57).)[2]

---

[1] For ECF filings, we cite to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] Garcia did not respond to Biggers's Local Rule 56.1 statement of facts. Therefore, we credit Biggers's uncontroverted facts to the extent they are supported by the record. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012) (adopting the same approach where one party failed to respond to another party's Local Rule 56.1 statement of facts); *United States v. Sadig*, Case No. 20-cv-1948, 2022 WL 2356625, at *2 (N.D. Ill. June 30, 2022) (same).

Biggers became interested in purchasing the commercial property located at 5445–5459 North Lincoln Avenue in Chicago, Illinois (the "Property") after reviewing a brochure that stated the property was "ENVIRONMENTAL PHASE I CLEAN." (Pl.'s SOF ¶¶ 4, 9; Lincoln Square Development Site Brochure ("Brochure") (Dkt. No. 57-1) at 2; Declaration of Michael-Bryant Hicks ("Hicks Decl.") (Dkt. No. 57-1) at 24 ¶ 3.)[3]

The title to the Property is held in a land trust (Land Trust Number 11-5888) administered by Albany Bank and Trust Company (the "Trustee"). (Affidavit of Albany Bank Senior Vice President ("Chip Aff.") (Dkt. No. 57-1) at 46 ¶ 2.) Garcia and his wife are beneficiaries of the trust. (*Id.* at 46 ¶ 4.) The Land Trust Agreement for the Property specifies that "no beneficiary hereunder at any time shall have any right, title, or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid." (Albany Bank Land Trust Agreement for Land Trust No. 11-5888 ("Land Trust Agreement") (Dkt. No. 57-1) at 50.) Although the Land Trust Agreement provides Garcia and his wife with the "power of direction to deal with the title to" the Property, the Trustee is the "sole owner of record," and Garcia and his wife have no "authority to contract for or in the name of the Trustee or to bind the Trustee personally." (*Id.* at 50–51.)

On May 6, 2021, Biggers entered a contract (the "Contract") with Garcia to purchase the Property for $1,550,000. (Pl.'s SOF ¶ 11; Mainstreet Organization of Realtors® Commercial Sales Contract for 5445–5459 North Lincoln Ave, Chicago, IL ("Contract") (Dkt. No 57-1) at 9–13.) The Property's Phase I ESA "clean" status was integral to Biggers's decision to purchase the Property. (Pl.'s SOF ¶ 10; Hicks Decl. at 24 ¶ 3.) The Contract was twice amended on May

---

[3] A Phase I Environmental Site Assessment (ESA) examines "current and historical uses of the site and potential threats to human health or the environment." (United States Environmental Protection Agency Assessing Brownfield Sites ("ESA Summary") (Dkt. No. 57-1) at 21.)

2

10 and June 7, 2021. (*See* Dkt. No. 57-1 at 14–19.) The Contract and its amendments refer to Garcia as the "Seller" of the Property, and Garcia signed and initialed the Contract as the "Seller." (*See, e.g.*, Contract at 9, 13, 14, 16.) Neither the Contract nor its amendments disclose the existence of the land trust or identify Garcia as the land trust's beneficiary. (*See generally id.* at 9–19.) Nor did Garcia seek or receive consent from the Trustee to enter the Contract. (Chip Aff. at 47 ¶ 9.)

On or about May 10, 2021, Biggers deposited $300,000 in earnest money with Fidelity National Title Insurance Company ("Fidelity"). (Pl.'s SOF ¶ 14.) The Escrow Trust Instructions state that Biggers's earnest money cannot be surrendered "except upon the receipt of an order signed by the parties. . . ." (Fidelity National Title Escrow Trust Instructions Strict Joint Order #1 ("Escrow Trust Instructions") (Dkt. No. 57-1) at 27.)

Under the Contract, Garcia confirmed (in a paragraph added by Biggers during negotiations) that Phase I ESA testing was complete and accurate. (Pl.'s SOF ¶ 13; Contract at 12 ¶ 29.) In July 2021, however, Biggers learned of a conversation between Garcia and the inspector who performed the Property's Phase I ESA where they discussed the logistics of conducting a Phase II ESA. (Pl.'s SOF ¶¶ 17–19; Dkt. No. 57-1 at 34; Hicks Decl. at 24 ¶ 4.)[4] After learning of this conversation, Biggers asked Garcia about conducting a Phase II ESA at the Property. (Pl.'s SOF ¶ 20.)

On July 12, 2021, Garcia emailed Biggers, stating that "I will not allow at this time Phase II testing." (Pl.'s SOF ¶ 20; Dkt. No. 57-1 at 37.) He suggested that if Biggers did not want to close on August 4, 2021, as planned, Biggers could have its earnest money returned, and Garcia

---

[4] A Phase II ESA is recommended if the Phase I ESA "reveal[s] known or potential contamination found on the property." (ESA Summary at 22.)

3

could be compensated for the legal fees that he incurred in connection with the transaction. (Pl.'s SOF ¶ 20; Dkt. No. 57-1 at 37.) The next day, Biggers's attorney informed Garcia that if his attorneys' fees were less than $25,000, Biggers wanted to terminate the Contract and receive its earnest money less the attorneys' fees. (Pl.'s SOF ¶¶ 21–24; Dkt. No. 57-1 at 38.) Biggers's attorney requested that Garcia send an invoice for legal fees, at which point he would prepare a joint termination and escrow release. (Dkt. No. 57-1 at 38.) Garcia responded that "[t]here will be no invoice from the lawyer" and stated that his legal fees were $25,000. (*Id.* at 40.) Garcia further instructed Biggers's attorney to "put the paperwork together" if "it is a deal." (*Id.*) That day, Biggers's attorney drafted a document titled "Joint Earnest Money Release and Contract Termination" (the "Release") and emailed it to Garcia. (Pl.'s SOF ¶¶ 26, 29; Dkt. No. 57-1 at 40–42.) As relevant here, the Release states that Biggers and Garcia agree that the Contract and the Escrow Agreement are terminated. (Dkt. No. 57-1 at 42.) It also directs Fidelity to disburse $300,000 in escrow as follows: $25,000 to the Seller, $274,570 to the Buyer, and $430 to the Escrow Agent for escrow and wire fees. (*Id.*) Garcia confirmed receipt of the Release but has not signed it. (Pl.'s SOF ¶¶ 27, 28, 30; *see also* Dkt. No. 57-1 at 43; Hicks Decl. at 25 ¶ 5.) The entirety of the $300,000 remains in Fidelity's possession. (Pl.'s SOF ¶ 31; Hicks Decl. at 25 ¶ 5.)

## LEGAL STANDARD

Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 294 (7th Cir. 2018) (internal quotation marks and citations omitted). When considering a motion for summary judgment, we construe all facts and draw all reasonable inferences in favor of the non-moving party. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). The movant "has the initial burden of demonstrating

4

there is no genuine dispute of material fact." *Bunn*, 908 F.3d at 295. To overcome the motion, the non-moving party must then set forth specific facts establishing a genuine issue of material fact. *Id*. A genuine issue of material fact exists "'only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (quoting *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007)).

## ANALYSIS

Biggers moves for summary judgment on Counts I and II of the Second Amended Complaint against Garcia. (*See* Mot. at 1–2.) Count I seeks a declaration that the Contract for sale of the Property is void *ab initio* because Garcia was not legally able to sell the Property. (*See* Second Amended Complaint ("SAC") (Dkt. No. 53) ¶¶ 43–49.) As relief for Count I, Biggers seeks (1) a declaratory judgment that the Contract is void and (2) an order instructing Fidelity to release Biggers's earnest money in the amount of $300,000. (*Id.* ¶ 49.) Count II alleges, in the alternative to Count I, that the July 2021 email communications between Biggers and Garcia established a separate contract to terminate the Contract, which Garcia then breached by failing to sign "or otherwise take steps to release Biggers' earnest money from Fidelity." (*See id.* ¶¶ 50–54.) For Count II, Biggers seeks (1) damages, (2) a declaratory judgment that the Contract is terminated, and (3) an order instructing Fidelity to release Biggers's earnest money. (*Id.* ¶¶ 53–54.)

We begin with Biggers's argument that it is entitled to summary judgment on Count I. Biggers argues that the Contract is void *ab initio* because the Property is held in a land trust and therefore Garcia, as a beneficiary of the land trust, could not legally sell the Property. (Mem. at 9–11.) Biggers argues that the powers of the beneficiary and the trustee of a land trust are distinct and that a beneficiary cannot convey property held by a trust because the beneficiary

5

does not hold legal or equitable title. (*Id.* at 9.) By executing the Contract and its amendments as the "Seller" of the Property without the Trustee's consent, Biggers continues, Garcia acted beyond his power as beneficiary, thus rendering the Contract void *ab initio*. (*Id.* at 9–11.)

A contract is void *ab initio* when it is executed by a party that does not have legal authority to agree to its terms. *Alliance Prop. Mgmt., Ltd. v. Forest Villa of Countryside Condo Ass'n*, 2015 IL App (1st) 150169, ¶ 29, 47 N.E.3d 1142, 1149. Under Illinois law, the beneficiary of a land trust typically does not have the legal authority to convey real property held by the land trust. *See Alward v. Jacob Holding of Ontario L.L.C.*, 2019 IL App (5th) 180332, ¶ 18, 139 N.E.3d 1010, 1015 (observing that in a typical Illinois land trust agreement "only the trustee may deal with or convey title"); *Trust Co. of Ill. v. Kenny*, 2019 IL App (1st) 172913, ¶ 57, 123 N.E.3d 1225, 1235 ("A beneficiary of a land trust cannot convey an interest in the real property held by the trust because a mere beneficiary does not typically hold legal or equitable title."). However, a beneficiary may contract to sell property held in a land trust where: (1) the land trust agreement gives him control of selling the property and "the right to direct the trustee to convey title to whomever he designates" and (2) the sales contract makes clear that the beneficiary is exercising his power to direct the conveyance of the property. *See Madigan v. Buehr*, 125 Ill. App. 2d 8, 16–17, 260 N.E.2d 431, 435 (1st Dist. 1970). Even so, the beneficiary cannot contract to sell the property as the property's owner. *Id.*

Here, the property at issue is in a land trust, of which Garcia and his wife are beneficiaries. (*See* Land Trust Agreement at 50.) The Land Trust Agreement vests Garcia and his wife with the "power of direction to deal with the title" to the Property and "control of the selling" of the Property. (*Id.* at 50–51.) However, Garcia did not contract to sell the Property as a beneficiary of a land trust, but rather, as its "Seller." (*See generally* Contract.) Nor does the

6

Contract disclose the existence of the land trust or Garcia's status as a beneficiary. (*Id.*); *see also Madigan*, 125 Ill. App. 2d at 16–17, 260 N.E.2d at 435 (explaining that a sales contract executed by a land trust beneficiary may be valid where the existence of the land trust and the beneficiary's status are disclosed). Therefore, Garcia acted beyond his powers when he contracted to sell the Property to Biggers. *See Nikolopulos v. Balourdos*, 245 Ill. App. 3d 71, 78, 614 N.E.2d 412, 417 (1st Dist. 1993) (concluding that the beneficiary of a land trust acted beyond his power when he contracted to sell property as its owner rather than its beneficiary); *Madigan*, 125 Ill. App. 2d at 17, 260 N.E.2d at 435 (same). The Contract is void *ab initio*.

In light of our conclusion on Count I, we need not address Count II, which was brought in the alternative.

## CONCLUSION

For these reasons, we hold that the Contract is void and grant Biggers's motion for summary judgment as to Count I. Fidelity is directed to release Biggers's $300,000 in earnest money to Biggers. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: July 25, 2022