UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIGGERS HOLDINGS LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JULIO A. GARCIA, REAL PEOPLE )<br>REALTY, INC., and DEMETRIOS T. )<br>CHRONIS, )<br>)<br>Defendants. ) | No. 21-cv-4680<br><br>Judge Marvin E. Aspen |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Biggers Holdings LLC ("Biggers") brought this lawsuit against Defendants Julio Garcia, Real People Realty, Inc. ("RPR"), and Demetrios T. Chronis over a failed real estate transaction. RPR and Chronis (collectively, "Movants") now move to dismiss Biggers's claims against them. (*See* Defendants Real People Realty, Inc. and Demetrios T. Chronis's Motion to Dismiss Plaintiff's Second Amended Complaint ("Mot.") (Dkt. No. 63) ¶¶ 2–4.)[1] Movants also seek to dismiss or strike Biggers's requests for relief. (*Id.* ¶ 5.) For the following reasons, we grant the Movants' motion.

**FACTUAL BACKGROUND**

We take the following facts from the operative Second Amended Complaint, "documents attached to the [Second Amended Complaint], documents that are critical to the [Second Amended Complaint] and referred to in it, [] information that is subject to proper judicial notice[,]" and any additional facts set forth in Biggers's opposition, "so long as those facts are

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quotation marks omitted). We have accepted as true all well-pleaded factual allegations and drawn all reasonable inferences in Biggers's favor. *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).

The parties' dispute involves commercial property located at 5447–5455 North Lincoln Avenue in Chicago, Illinois (the "Property"). (Second Amended Complaint ("SAC") (Dkt. No. 53) ¶ 1.) Garcia uses the Property for an automobile repair shop. (*Id.* ¶ 15.) Chronis, a broker for RPR, listed the Property for sale on his website. (*Id.* ¶¶ 12, 16.) He also included a marketing brochure for the Property on his website. (*Id.* ¶ 19.) Among other things, the marketing brochure states: "ENVIRONMENTAL PHASE I CLEAN." (*Id.*; Dkt. No. 53-1 at Exhibit A at 2.) By referring to the Property as "Environmental Phase I Clean," the brochure represented that a Phase I Environmental Site Assessment ("Phase I ESA")[2] had not identified any environmental concerns from the use of the Property. (SAC ¶ 18.)

"Biggers is a holding company for subsidiaries that purchase and operate automobile repair shops." (*Id.* ¶ 9.) It became interested in purchasing the Property after reviewing the marketing brochure for the Property on Chronis's website. (*Id.* ¶ 19.) Because of "the Property's historical use as an automobile repair shop and the environmental conditions that can often arise" out of such use, the brochure's "Environmental Phase I Clean" representation was "pivotal" to Biggers's interest in the Property. (*Id.*)

On May 6, 2021, Biggers contracted with Garcia to purchase the Property for $1.55 million, with a closing date of August 4, 2021. (*Id.* ¶ 20; Mainstreet Organization of Realtors®

---

[2] A Phase I ESA assesses the likelihood that a site's soil or groundwater is contaminated using "visual observations, historical use reviews, and regulatory records." (SAC ¶¶ 18, 30.)

2

Commercial Sales Contract ("Contract") (Dkt. No. 53-1 at Exhibit B) ¶ 1.) In the Contract, Garcia represented that he was the seller of the Property. (*See* SAC ¶ 24; Contract at 1 (reference to Julio Garcia as the "Seller").) However, Garcia is merely a beneficiary of the land trust that holds the Property and does not have authority to sell the Property. (SAC ¶¶ 25–27.) Biggers did not know this fact when it agreed to buy the Property. (*Id.* ¶ 26.) On May 10, 2021, Biggers deposited an initial $300,000 in earnest money with Fidelity National Title Insurance Company ("Fidelity"), the escrow trustee. (*Id.* ¶ 22; Dkt. No. 53-1 at Exhibit C at 21.)

As part of the Contract, Garcia represented and warranted that he had "provided a complete environmental Phase I to [Biggers] and that the assessments contained therein are true and complete as of the date of such Phase I report." (SAC ¶ 21; Contract ¶ 29.) Biggers included this representation and warranty in the Contract because it recognized "the potential environmental hazards that exist on properties used as auto repair sites[.]" (SAC ¶ 21.) Biggers further alleges that its inclusion of this provision shows the importance it placed on the clean Phase I ESA representation in the Property's marketing brochure. (*Id.*)

"The Property's Phase I ESA did not, on its face, raise significant environmental issues." (*Id.* ¶ 28.) On July 6, however, Biggers learned that before the parties had entered the Contract, the inspector who had conducted the Phase I ESA had recommended to Garcia that a Phase II ESA[3] be conducted. (*Id.* ¶ 28.) According to Biggers, this meant that the Phase I ESA was *not* clean, and that Defendants had "failed to disclose complete details about the Property's environmental condition." (*Id.*)

---

[3] A "Phase II ESA considers whether contamination is, in fact, present through soil and water sampling." (*Id.* ¶ 30.)

After learning about the inspector's Phase II ESA recommendation, a representative of Biggers spoke with Chronis about the recommendation and the marketing brochure's representation that the Phase I ESA was "clean." (*Id.* ¶ 31.) Despite being informed of the Phase I ESA issue by Biggers, Chronis continued to market the Property as having no environmental concerns. (*Id.* ¶¶ 32–33; Dkt. No. 53-1 at Exhibit E.) "Biggers suspects, on information and belief, that [Chronis] knew about the issues with the Phase I ESA all along[.]" (SAC ¶ 34.)

Biggers also "requested that Garcia provide access to the Property" to conduct a Phase II ESA. (*Id.* ¶ 35.) Garcia refused, but he suggested that the parties cancel the deal. (*Id.* ¶¶ 35–36.) Biggers agreed to cancel the deal, and it sent Garcia a Joint Earnest Money Release, which reflects the parties' agreement to terminate the Contract. (*Id.* ¶¶ 38–40.) Garcia, however, refused to sign the release. (*Id.* ¶ 41.) Although not explicitly pled, it is apparent that the sale of the Property was not consummated.

## PROCEDURAL HISTORY

On August 24, 2021, the Julio Garcia Trust, by its beneficiary, Garcia, sued Biggers for breach of contract in the Circuit Court of Cook County, Illinois (the "Garcia Lawsuit"). (*See* Case No. 21-cv-4912 (N.D. Ill.), Dkt. No. 1-1 at 2, 4.) The Julio Garcia Trust sought an order directing Biggers to complete the sale of the Property or, alternatively, an award of damages. (*Id.* at 4–5.) The following week, Biggers filed the current lawsuit against the Julio Garcia Trust, Garcia, and Movants. (Complaint ("Compl.") (Dkt. No. 1).)

On September 16, Biggers removed the Garcia Lawsuit to federal court, where it was assigned to Judge Valderrama. (*See* Case No. 21-cv-4912 (N.D. Ill.), Dkt. No. 1.)

On September 28, Biggers filed a motion asking us to reassign the Garcia Lawsuit to our docket. (Dkt. No. 8.) The same day, Biggers filed a motion asking Judge Valderrama to stay the

Garcia Lawsuit while we resolved its motion to reassign. (Case No. 21-cv-4912 (N.D. Ill.), Dkt. No. 8.) After Judge Valderrama denied the motion as procedurally improper, Biggers renewed its motion on October 6. (Case No. 21-cv-4912 (N.D. Ill.), Dkt. Nos. 13, 14.) On October 20, Judge Valderrama granted the motion and stayed the Garcia Lawsuit until 20 days after we ruled on Biggers's motion to reassign. (Case No. 21-cv-4912 (N.D. Ill.), Dkt. No. 16.)

Less than two weeks later, on November 1, the Julio Garcia Trust voluntarily dismissed the Garcia Lawsuit without prejudice pursuant to Rule 41(a)(1)(A)(i). (Case No. 21-cv-4912 (N.D. Ill.), Dkt. No. 17.) Biggers then moved to withdraw its motion to reassign, which we granted. (Dkt. Nos. 46, 48.)

We have jurisdiction over this lawsuit based on the parties' diversity of citizenship. (*See, e.g.,* SAC ¶¶ 9–13, 71.)

## ANALYSIS

Biggers asserts four counts against Movants: (1) common law fraud (Count IV); (2) fraud under Illinois's Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et. seq.* (Count V); (3) violation of Illinois's Real Estate License Act of 2000 ("License Act"), 225 Ill. Comp. Stat. 454/1-1 *et seq.* (Count VI); and (4) negligent misrepresentation (Count VII). (SAC ¶¶ 61–86.) Both Biggers and Movants apply Illinois law when discussing the non-statutory claims (*see, e.g.*, Defendants Real People Realty, Inc. and Demetrios T. Chronis's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint ("Mem.") (Dkt. No. 67) at 17–19, 22–23; Plaintiff's Opposition to Defendants Real People Realty Inc. and Demetrios Chronis's Motion to Dismiss ("Opp'n") (Dkt. No. 83) at 8–10), so we do the same. *See Marcatante v. City of Chicago*, 657 F.3d 433, 440 (7th Cir. 2011) (applying Illinois law where parties agreed that state law claims were controlled by Illinois law).

5

Movants raise three arguments in their motion to dismiss. First, Movants argue that Biggers's claims against them in this lawsuit are barred because Biggers did not assert them in the Garcia Lawsuit, as it was required to do under Federal Rule of Civil Procedure 13(a). (Mot. ¶ 3; Mem. at 9–14.) Second, Movants argue that Biggers's allegations are inadequate to state a claim under Rule 12(b)(6) and, for Biggers's fraud claims, Rule 9(b). (Mot. ¶ 4; Mem. at 14–23.) Finally, Movants argue that we should dismiss or strike Biggers's requests for relief. (Mot. ¶ 5; Mem. at 23–29.)

## I. Compulsory Counterclaims

Movants first argue that Biggers's claims against them in this lawsuit are barred because Biggers was required to, but did not, raise these claims as counterclaims in the Garcia Lawsuit in which Biggers was a defendant. (Mem. at 9–14.) Biggers responds that its suit is not barred because the Garcia Lawsuit was dismissed before it filed a responsive pleading. (Opp'n at 4–5.)

Generally, a defendant in federal litigation must raise a claim it has against the plaintiff as a counterclaim if (1) the claim exists at the time the defendant serves its pleading; (2) the claim "arises out of the transaction or occurrence that is the subject matter of the [plaintiff]'s claim;" and (3) the claim "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). If the defendant does not plead this "compulsory counterclaim," the defendant is barred "from bringing a later independent action on that claim." 6 Charles Alan Wright et al., FED PRAC. & PROC. § 1417 (3d ed. Apr. 2022 update); *see Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) (the failure to include compulsory counterclaims in a suit "means that they are thereafter barred"). The purpose behind the compulsory counterclaim rule "is judicial economy; to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background." *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994); *see also* 6 Charles Alan

Wright et al., FED PRAC. & PROC. § 1409 (3d ed. Apr. 2022 update) (observing that the compulsory counterclaim rule is designed to avoid "a wasteful multiplicity of litigation on claims arising from a single transaction or occurrence").

The text of Rule 13(a), however, requires a *pleading* to "state as a counterclaim any claim that—at the time of its service—the *pleader* has against an opposing party." Fed. R. Civ. P. 13(a)(1) (emphasis added). In other words, Rule 13(a) "does not apply unless there has been some form of pleading" filed by the defendant. *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1082 (7th Cir. 1979); *see also Tyler v. DH Cap. Mgmt., Inc.*, 736 F.3d 455, 459 (6th Cir. 2013) ("Where the adverse party has no opportunity to file a pleading, it has no opportunity to assert its counterclaim, and thus its claim will not be barred."); *Media Commc'ns, Inc. v. Multimedia, Sign Up, Inc.*, No. 99 C 5009, 1999 WL 966078, at *2 (N.D. Ill. Oct. 8, 1999) (concluding that Rule 13(a) did not bar the suit where a pleading had not yet been filed in other action).

Biggers never filed a responsive pleading in the Garcia Lawsuit. (*See generally* Docket for Case No. 21-cv-4912 (N.D. Ill.)); Fed. R. Civ. P. 7(a) (defining a "pleading" as a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a cross claim, a third-party complaint, an answer to a third-party complaint, or a reply to an answer). Therefore, Rule 13(a) does not apply. *See Martino*, 598 F.2d at 1082–83; *Media Commc'ns, Inc.*, 1999 WL 966078, at *2.

Moreover, the raison d'être for Rule 13(a)—judicial economy—is not implicated here, where the other action was in a nascent stage before it was voluntarily dismissed. After the Garcia Lawsuit was removed to this District, Judge Valderrama considered two motions to stay (the first was denied for technical non-compliance with the Court's Standing Order; the second

7

was granted without responsive briefing), and then the Julio Garcia Trust shortly thereafter dismissed the suit while it was stayed. (*See generally* Docket for Case No. 21-cv-4912 (N.D. Ill.).) No substantive litigation took place, and thus, few judicial resources were expended.

The authority that Movants cites in support of their position does not compel a different result. For example, in both *Pitcher v. Waldman*, No. 1:12-cv-215, 2013 WL 632368, at *2–3, *6–7 (S.D. Ohio Feb. 20, 2013) and *Crown Life Insurance Co. v. American National Bank and Trust Co. of Chicago*, 35 F.3d 296, 300 (7th 1994), the courts applied the compulsory counterclaim rule after answers had been filed. Two of the other cases cited by Movants—*In re Furlong*, 426 B.R. 303, 308 (Bankr. C.D. Ill. 2010) and *In re American Lodging, Inc.*, 397 B.R. 906, 910 (Bankr. N.D. Ind. 2008)—are inapplicable, as they address practices in bankruptcy proceedings. And another case—*Hongwei Zhang v. United Technologies Corp.*, No. 10cv0660 DMS (MDD), 2011 WL 3904107, at *1–2 (S.D. Cal. Sept. 6, 2011)—concerns a different factual scenario; specifically, whether a motion to compel discovery should have been filed before litigation was stayed. *Id*. Because Movants have not convinced us that Rule 13(a) bars the instant action, we decline to dismiss Biggers's claims on that basis.

**II.     Motion to Dismiss**

Next, Movants argue that dismissal pursuant to Rule 12(b)(6) is warranted because Biggers has not adequately pled claims for fraud (Count IV), violation of the ICFA (Count V), violation of the License Act (Count VI), or negligent misrepresentation (Count VII). (Mem. at 14–23.)

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, we accept as true all well-pleaded facts in the plaintiff's complaint and draw all reasonable inferences in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476,

8

480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "If the well-pleaded allegations plausibly suggest—as opposed to possibly suggest—that the plaintiff[] [is] entitled to relief, the case enters discovery." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

Claims alleging fraud must also satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted).

  A. **Common Law Fraud (Count IV)**

To plead common law fraud under Illinois law, a plaintiff must allege the following: "'(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996)). Because Count IV alleges fraud, it is also subject to the heightened pleading requirement of Rule 9(b). *Cornielsen*, 916 F.3d at 598. Movants challenge the second, fourth, and fifth elements of

9

Biggers's fraud claim. (*See* Mem. at 17–18.) We begin our analysis with the second element: a defendant's knowledge that the statement was false, i.e., scienter.

With respect to scienter, Biggers "suspects, on information and belief," that Chronis knew that the "Environmental Phase I Clean" statement was false when he included it in the Property's marketing brochure. (SAC ¶¶ 33–34.) Biggers believes this to be true because "[i]n or about July 2021," Biggers's principal spoke with Chronis "twice shortly after learning about the true results of the Phase I ESA," and yet "Chronis continued to market the Property, falsely stating that it had no environmental concerns." (*Id.* ¶¶ 31–34, 63.)

Movants contend that these allegations are insufficient because Biggers has not provided factual support for the hypothesis that they knew the statement in the marketing brochure was false when they made it. (Mem. at 15.)[4] According to Movants, Biggers's allegations in this respect are only "upon information and belief," and therefore, insufficient to meet the Rule 9(b) standard. (*Id.*) In their view, the allegation that they continued to market the Property inaccurately, even after Biggers spoke to them about it, is "irrelevant," as it does not suggest that they knew of any issues when they were marketing the Property to Biggers. (*Id.* at 15–16.) Biggers disagrees, arguing that it need only plead allegations concerning a party's mental state generally under Rule 9(b). (Opp'n at 5–8.)

Movants have the better argument. Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must still plead sufficient facts from which a court can reasonably infer that the defendant acted with the requisite state of mind. *See Simonian v. Maybelline LLC*, No. 10 C 1615, 2011 WL 814988,

---

[4] For the purpose of their Motion, Movants do not challenge that Chronis's knowledge can be imputed to RPR. (*See generally* Mem.)

10

at *4 (N.D. Ill. Mar. 1, 2011); *San Francisco Tech., Inc. v. Sunstar Ams., Inc.*, No. 10 C 5000, 2011 WL 291168, at *4 (N.D. Ill. Jan. 27, 2011). And Biggers has not alleged sufficient facts from which we can infer that Chronis (and, by extension, RPR) knew that the statement "Environmental Phase I Clean" was false at the time it was conveyed to Biggers. The allegations supporting Chronis's knowledge in this case are similar to those found to be insufficient in *Ibarolla v. Nutrex Research, Inc.*, No. 12 C 4848, 2013 WL 672508, at *3–4 (N.D. Ill. Feb. 25, 2013). In *Ibarolla*, the plaintiff alleged that defendants fraudulently concealed the potential dangers of a product because they omitted warnings about certain ingredients. *Id.* at *2. However, her allegations in support of scienter fell short, as her amended complaint contained no facts suggesting that defendants knew that any of the ingredients were unsafe at the time they marketed and sold the product to her. *Id.* at *4. Rather, the allegations in the complaint suggested only that defendants may have learned the product was unsafe *after* they marketed and sold it to her. *Id.*

Biggers makes much of the fact that Movants did not change their marketing materials after Biggers alerted Chronis to its concerns "[i]n or about July 2021." (SAC ¶¶ 31–34, 63.) But this suggests only that Movants had knowledge of their brochure's alleged falsity *after* Biggers approached Chronis, which was well after Chronis made the statement that Biggers allegedly relied upon when agreeing to purchase the Property. Here, as in *Ibarolla*, the only allegations supporting scienter involve knowledge acquired *after* the alleged misrepresentation was made. Because Biggers has not plausibly alleged that Movants knew there were environmental issues with the Property when they advertised it as "Environmental Phase I Clean," we dismiss Biggers's fraud claim.

11

### B. Illinois Consumer Fraud Act (Count V)

The conduct underlying Biggers's ICFA claim is substantially similar to the conduct that forms the basis for Biggers's common law fraud claim. (*See* SAC ¶¶ 67–71.) However, Biggers adds that Movants' conduct "caused fraud on the market generally or otherwise raises consumer protection concerns" because Movants "have posted a marketing brochure on a publicly accessible website that includes blatant misrepresentations." (*Id.* ¶ 72.) According to Biggers, the marketing brochure still appeared on Chronis's website and elsewhere on the Internet as of November 18, 2021. (*Id.*)

The ICFA prohibits, among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact[.]" 815 Ill. Comp. Stat. 505/2. To adequately plead a claim under the ICFA, a plaintiff must plead "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019).

Movants raise several arguments for dismissal of this claim, but we focus on one: Movants' contention that Biggers cannot maintain a claim under the ICFA because it is not a "consumer" within the meaning of the ICFA and does not satisfy the consumer nexus test. (Mem. at 20–21.) "[B]usinesses can sometimes sue one another under the [ICFA], but a business plaintiff under the ICFA must show a 'nexus between the complained of conduct and consumer protection concerns,'" i.e., a "consumer nexus." *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 823 (7th Cir. 2018) (quoting *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996)). Neither the ICFA nor the Illinois Supreme Court has defined the phrase "consumer protection concerns," but courts have concluded that such concerns are

12

implicated where, for example, a defendant's practice is designed to mislead consumers about a competitor or involves public health, safety, or welfare issues. *See Kraft Foods Grp., Inc. v. SunOpta Ingredients, Inc.*, No. 14 C 9419, 2016 WL 5341809, at *5–6 (N.D. Ill. Sept. 23, 2016).

Biggers seems to concede that it is not a "consumer" (*see* Opp'n at 11–12), but it contends that there is a connection between the complained-of conduct and consumer protection concerns because "Defendants' conduct has caused fraud on the market generally or otherwise raises consumer protection concerns as they have posted a marketing brochure on a publicly accessible website that includes blatant misrepresentations." (SAC ¶ 72.) But the mere fact that an allegedly deceptive or misleading advertisement appears on the Internet is not sufficient to show a consumer nexus. *See Onvi, Inc. v. Radius Project Dev., Inc.*, 19 C 3201, 2020 WL 4607242, at *5 (N.D. Ill. Aug. 11, 2020) (concluding that plaintiff had not satisfied the consumer nexus test where web content was not directed at consumers); *see also Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 740 (N.D. Ill. 2011) (concluding that the consumer nexus test was not satisfied where false representations about a product were directed to plaintiff and other industry participants, not consumers). For this theory to be availing, Biggers must provide some explanation as to why the advertisement was directed to consumers and not just at other business entities. *See Onvi*, 2020 WL 4607242, at *5. Because Biggers has failed to do so, its ICFA claim is dismissed.

    **C.    License Act (Count VI)**

Count VI alleges that Movants violated section 15-25 of the License Act. (SAC ¶¶ 73–80.) Section 15-25(a) states that:

> Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information. A licensee engaged by a seller client shall timely disclose to customers who are prospective buyers all latent material adverse facts pertaining to the physical condition of the property that are actually known by the licensee and

13

> that could not be discovered by a reasonably diligent inspection of
> the property by the customer. A licensee shall not be liable to a
> customer for providing false information to the customer if the false
> information was provided to the licensee by the licensee's client and
> the licensee did not have actual knowledge that the information was
> false. No cause of action shall arise on behalf of any person against
> a licensee for revealing information in compliance with this Section.

225 Ill. Comp. Stat. 454/15-25. The term "Licensee" refers to individuals licensed under the License Act, including RPR and Chronis. (*See* SAC ¶ 77 (citing 225 Ill. Comp. Stat. 454/1-10).) Section 15-5(c) creates a private right of action for buyers, among others. *See* 225 Ill. Comp. Stat. 454/15-5(c).

Biggers alleges that Chronis "negligently or knowingly (a) provid[ed] false information about the Phase I ESA for the Property and (b) fail[ed] to disclose latent material adverse facts that he knew about the physical condition of the Property." (SAC ¶ 78.) Specifically, Chronis stated in the Property's marketing brochure that the Phase I ESA was "clean," though he knew that an inspector had recommend that Garcia conduct a Phase II ESA due to concerns that arose during the inspector's initial review. (*Id*.)

Movants contend that Biggers has not sufficiently alleged that Movants negligently or intentionally provided false information to Biggers. (Mem. at 21–22.) They also argue that given the facts of the case, their actions are covered by a safe harbor provision, which shields brokers from liability where "'the false information was provided to the [broker] by the [broker's] client and the [broker] did not have actual knowledge that the information was false.'" (*Id*. at 22 (quoting 225 Ill. Comp. Stat. 454/15-25).) Movants further argue that they did not have a duty to obtain environmental testing of the property, and Biggers could have determined the environmental condition of the Property through a reasonable inspection. (*Id*.) Finally, they contend that Biggers cannot show that they caused his damages. (*Id*.)

Biggers responds that several of Movants' arguments are not properly considered at this stage because they are affirmative defenses that are unsupported by the allegations in the SAC. (Opp'n at 8.) Biggers also disagrees that it did not adequately plead knowledge for the reasons discussed above. (*Id*. at 5–8.)

As we noted in our discussion of Biggers's common law fraud claim, Biggers has not plausibly pled that Movants knowingly gave it false information when marketing the Property to Biggers. Specifically, Biggers has not alleged any facts from which we can infer that Movants knew the statements in the marketing brochure were false when they made them to Biggers. Biggers provides no additional facts from which to infer that Movants acted negligently either. (*See* SAC ¶¶ 78–79 (relying on the same allegations to show that Movants acted "negligently" as to show that they acted "knowingly").) Conclusory allegations like these are insufficient to maintain a claim. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Accordingly, Biggers's claim under the License Act is dismissed.

### D. Negligent Representation (Count VII)

In Count VII of the SAC, Biggers asserts a claim for negligent misrepresentation against Movants. (SAC ¶¶ 81–97.) To state a claim for negligent misrepresentation under Illinois law, the plaintiff must plausibly allege: "'(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.'" *Tricontinental Indus.*, 475 F.3d at 833–34 (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334–35, 843 N.E.2d 327, 332 (2006)).

15

Biggers alleges that Movants "had a duty under the License Act and common law to communicate accurate information to" it. (SAC ¶ 82.) Nonetheless, Biggers continues, Movants negligently misrepresented the Property by advertising that the Phase I ESA was "clean" when "[i]n reality, due to concerns revealed by the Phase I ESA, the [i]nspector suggested a Phase II ESA." (*Id.* ¶ 83.) Biggers adds that "Chronis knew the statements about the Property's Phase I ESA were false or, at the very least, he was careless or negligent in ascertaining the truth or falsity of those statements and not disclosing the complete information regarding the Phase I ESA to Biggers." (*Id.* ¶ 84.) According to Biggers, Chronis intended to induce Biggers to buy the Property, and Biggers relied on Chronis's statements when agreeing to the Contract. (*Id.* ¶ 85.) As a result, Biggers was purportedly damaged by not receiving the benefit of the bargain. (*Id.* ¶ 86.)

Movants argue that Biggers has failed to state a plausible claim for negligent representation because Chronis included information that he received from Garcia in the advertisement, and real estate brokers have no independent duty to verify the accuracy of the information that they receive from a seller. (Mem. at 23.) Additionally, Movants argue that Biggers cannot show reliance or damages that were proximately caused by them. (*Id.*) In response, Biggers argues that Movants' objections to its negligent misrepresentation claim amount to affirmative defenses, which we should not consider at this stage. (Opp'n at 8.)

Biggers's allegations fall short as to the second element of its negligent misrepresentation claim: carelessness or negligence in ascertaining the truth of the statement by the party making it. Biggers alleges that "Chronis knew the statements about the Property's Phase I ESA were false, or at the very least, he was careless or negligent in ascertaining the truth or falsity of those statements and not disclosing the complete information regarding the Phase I ESA to Biggers."

16

(SAC ¶ 84.) However, as noted above, Biggers has not plausibly alleged that Chronis "knew" the statements about the Property's Phase I ESA were false until Biggers's agent approached Chronis about that issue. And Biggers's allegations of carelessness and negligence are conclusory. Biggers has not alleged what Chronis did—or did not do—to warrant the labels of "careless" and "negligent." (*Id*.) For example, Biggers has not alleged that Chronis should have, but failed to, conduct certain inquiries before publishing information about the Property's Phase I ESA. Because the Second Amended Complaint is devoid of factual support in this regard, Biggers's claim for negligent misrepresentation is dismissed.[5]

## CONCLUSION

For the reasons set forth above, we grant Movants' motion to dismiss (Dkt. No. 63) and dismiss all of Biggers's claims against Chronis and RPR. Biggers shall have until August 25, 2022, to file an amended complaint if it can do so in accordance with this Opinion and Federal Rule of Civil Procedure 11. It is so ordered.

_____
Honorable Marvin E. Asper
United States District Judge

Dated: August 4, 2022

---

[5] Because we grant Chronis and RPR's motion to dismiss, we need not consider their request to dismiss or strike Biggers's requests for relief against them.

17